IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

LINDA DRAKE, )

    PLAINTIFF, )

VS. ) CV99-H-1680-NE

CHRYSLER MOTOR CORPORATION, )

    DEFENDANT. )

FILED
00 DEC 20 AM 9:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
DEC 20 2000

**MEMORANDUM OF DECISION**

The court has before it the June 30, 2000 motion of defendant for summary judgment in its favor which, pursuant to the July 11, 2000 order, as amended by orders entered July 17, 2000 and August 2, 2000, has been under submission since August 15, 2000. The court is not accustomed to delaying a ruling on motions for summary judgment as long as it has delayed ruling on this pending motion, but this is a most unusual and troubling case. The unusual and troubling nature of the case has nothing to do with who should prevail on the pending motion for summary judgment. Clearly, as later discussed, there is no dispute as to any material fact and defendant is entitled to summary judgment in its favor with regard to three remaining positions which plaintiff claims were denied to her on the basis

96

of her race.[1]  What is unusual about this case is that it appears more to be a labor dispute rather than a claim for employment discrimination with regard to race.  It is troubling because plaintiff has misrepresented to her attorney material facts related to her claims which caused her attorney to seek to withdraw from this case on July 14, 2000.[2]  While it was and still continues to be clear to the court that plaintiff has misrepresented material information to her attorney, as well as to opposing counsel and to the court, the court elected to deny the motion to withdraw at that time in view of the fact that the motion to withdraw was filed two weeks after the motion for summary judgment was filed and during the period counsel should have been preparing material to submit in opposition to the summary judgment motion.  The court is of the opinion that the

---

[1] Like defendant, the court views that plaintiff's August 15, 2000 brief in opposition to the motion for summary judgment abandoned three other positions which plaintiff earlier asserted were denied on the basis of her race.

[2] For some of the background of the court's concern, see: the July 14, 2000 motion to withdraw (Doc. 58); the July 28, 2000 memorandum of defendant (Doc. 65) in support of its July 28, 2000 motion for sanctions (Doc. 64); the August 15,2000 second motion of defendant for sanctions (Doc 75) and its memorandum (Doc 76) in support thereof, including particularly the exhibits attached to such memorandum; the order entered August 24, 2000 (Doc 77); the September 6, 2000 responses of plaintiff (Doc. 81 and Doc 82) required by the August 24, 2000 order; defendant's September 15, 2000 reply (Doc. 84) to those responses; and the September 15, 2000 affidavit of counsel for defendant (Doc. 85).

2

resolution of the pending motion for summary judgment in favor of defendant will render moot the basic relief sought in the two motions for sanctions filed by defendant July 28, 2000 and August 15, 2000, and this will be of benefit to all parties concerned. Assessment of an award of large attorneys fees is of no benefit to a prevailing party where there is little or no likelihood of ever collecting any awarded amount.

Plaintiff brings her claims to this court under Title VII and § 1981 asserting in essence racial discrimination associated with the three positions remaining at issue which were awarded to white persons. As to plaintiff's employment discrimination claim predicated on the filling of each of the positions, defendants seeks summary judgment in its favor. The same framework long used to analyze claims under Title VII is also employed in assessing claims of employment discrimination under § 1981. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) ("Both of these statutes [Title VII and section 1981] have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well."). And the Court is aware that the summary judgment rule applies in job discrimination cases just as in other cases. See Chapman v. AI Transport, 229 F.3d 1012, 1025

(11th Cir. 2000) (en banc) (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims. See id. (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen"). In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics. A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon. See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987). Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption." Burns v. Gadsden State Community College, 908 F.2d 1512 (11th Cir. 1990). Cf. Wright v. Southland Corp., 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and

4

a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition). However, direct evidence does not include "stray remarks in the workplace" or "statements by nondecisionmakers" or "statements by decisionmakers unrelated to the decisional process itself." Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (O'Connor, J., concurring) (1989); see also EEOC v. Alton Packaging Corp., 901 F.2d 920, 924 (11th Cir. 1990) (quoting Price Waterhouse).

The stray remark of Ray Holton regarding the initials of counsel for defendant falls short, far short of being direct evidence. Thus, plaintiff has presented only circumstantial evidence of racial discrimination. "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." Combs, 106 F.3d at 1527. Under the McDonnell Douglas and Burdine framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. See id. at 1527-28. The methods of presenting a prima facie case, as well as the

5

exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation. See, e.g., Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Lincoln v. Board of Regents of Univ. Sys., 697 F.2d 928, 937 (11th Cir. 1983). In general, a plaintiff establishes a prima facie case of employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly. See McDonnell Douglas, 411 U.S. at 802.

Once the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.[3] See Combs, 106 F.3d at 1528. The employer "need not persuade the court that it was actually motivated by the proferred reasons." Burdine, 450 U.S. at 254-55; see Chapman, 229 F.3d at 1024. If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of

---

[3] See Chapman, 229 F.3d at 1032 (A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

6

production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[4]  Where the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons.  See Chapman, 29 F.3d at 1024-25. Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case.  See Combs, 106 F.3d at 1528.

    Despite this shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at. 253.  Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did

---

[4] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient. Chapman, 229 F.3d at 1030..

7

indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2108-09 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion);[5] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

Plaintiff was employed by Chrysler Motor Corporation (now Daimler-Chrysler Corporation) on July 18, 1983 and has throughout

---

[5] The court in Chapman modified the statement in Combs contrary to this holding in Reeves after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law. See Chapman, 229 F.3d at 1025, n.11..

8

her employment been employed at defendant's plant in Huntsville, Alabama. At all relevant times she has been a member of the bargaining unit represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and its Local Union 1929 (the "Union") and has been employed as an office and clerical worker. The terms and conditions of her employment have been governed by national and local collective bargaining agreements. The office and clerical workers are divided into 13 separate Divisions with each Division having its own group of jobs, designated by "job codes." Seniority is exercised by Division and consequently separate seniority lists are maintained for each Division.

Under the national collective bargaining agreement plaintiff at all relevant times held a seniority date in Division III of July 19, 1983 and at no relevant time did she have seniority in any of the other twelve separate Divisions. On January 10, 1997 plaintiff was transferred into the "job bank" to prevent her from going on layoff status as a result of defendant's sale of its Pentastar Electronics division. An employee in the "job bank" performs non-traditional jobs or attends school and at all times is paid his or her regular wage and benefit by Chrysler. Under the collective bargaining agreement an employee in job bank status may be assigned to work in the plant when a position

becomes vacant if the employee has sufficient seniority in the Division where the vacant position exists.

Around February 17, 1997 there was an open position for Clerk General II in Division VIII (job code 112-000). Donna Morris[6] was selected to fill the position. Morris had a seniority date in Division VIII of February 20, 1984 whereas plaintiff had no seniority whatsoever in Division VIII. Consequently plaintiff was not awarded the position for she was not entitled under the collective bargaining agreement to the position.

Around December 7, 1998 there was an open position for an Engineering Records Clerk II in Division V (job code 578-000). Carole Akin was selected to fill the position. Akin had a seniority date in Division V of April 23, 1984, whereas plaintiff had no seniority whatsoever in Division V. Consequently plaintiff was not awarded the position for she was not entitled under the collective bargaining agreement to the position.

The final position at issue is that of Car Coordinator. This position is a non-union position and is not covered by the collective bargaining agreement. It has never been a bargaining unit job and the collective bargaining agreement does not govern

---

[6] Donna Morris has since married and is Donna Lang.

placements into that position.  Plaintiff never applied for the position and never advised defendant that she wanted to apply for a non-bargaining unit position or that she wanted to leave the Union.  The position was filled by Renae England, an employee of Wackenhutt Security which is a contractor for defendant providing security employees for defendant's plants.  Renae England was already on the payroll of Wackenhutt and remained so after she took over the duties of Car Coordinator.  Defendant simply caused the duties associated with the Car Coordinator position to be assigned to the Wackenhutt employee, Renae England, and defendant incurred no additional expenses by filling the position in this fashion.

As to the Clerk General II position in Division VIII and the Engineering Records Clerk II position in Division V, plaintiff has failed to establish a prima facie case in that neither Donna Morris nor Carole Akin who filled the positions was similarly situated to plaintiff.  Both of them had seniority in their respective Divisions and under the collective bargaining agreement were entitled to the positions over plaintiff who had no seniority in either Division.  As to the Car Coordinator position plaintiff has also failed to establish a prima facie case in that Renae England was clearly not similarly situated to plaintiff.  The work of the Car Coordinator was not assigned to

11

an employee of defendant but rather to an employee of a contractor of defendant (Wackenhutt) and Carole Atkin did not become an employee of defendant.  But lack of a prima facie case is not the only fatal flaw in plaintiff's claim, for even assuming she has established a prima facie case defendant's motion for summary judgment is due to be granted.  Defendant has in each instance articulated a legitimate, nondiscriminatory reason for the employment decisions challenged by plaintiff.  In each instance the proffered reason is clearly one that might motivate a reasonable employer.  Plaintiff has in each instance failed to produce sufficient evidence to allow a rational trier of fact to disbelieve the defendant's proffered legitimate reasons.  Plaintiff has also failed to produce evidence to allow a rational trier of fact to conclude that plaintiff's race was a motivating factor in any of the three challenged employment decisions.  There is no dispute as to any material fact and defendant is entitled to judgment in its favor as to all of plaintiff's claims.  A separate final judgment will be entered.

DONE this 20th day of December, 2000.

*[signature]*
SENIOR UNITED STATES DISTRICT JUDGE